UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


PAMELA ELLIS                                         PLAINTIFF

VS.                               CIVIL ACTION NO. 3:03CV357LN

ANTHONY J. PRINCIPI, IN HIS CAPACITY AS
SECRETARY OF THE UNTIED STATES DEPARTMENT
OF VETERANS AFFAIRS                                  DEFENDANT

CONSOLIDATED WITH

PAMELA ELLIS                                         PLAINTIFF

VS.                              CIVIL ACTION NO. 3:03CV1355LN

ANTHONY J. PRINCIPI, IN HIS CAPACITY AS
SECRETARY OF THE UNTIED STATES DEPARTMENT
OF VETERANS AFFAIRS                                  DEFENDANT



MEMORANDUM OPINION AND ORDER


     This cause is before the court on motion of defendant Anthony

J. Principi, Secretary of the United States Department of Veterans

Affairs, to dismiss plaintiff Pamela Ellis's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted, or in the alternative, for

summary judgment pursuant to Federal Rule of Civil Procedure 56.

Plaintiff, proceeding pro se, has responded in opposition.  Having

considered the memoranda and submissions of the parties, the court

concludes that defendant's motion should be granted.

     Pamela Ellis filed suit against her former employer, the

United States Department of Veterans Affairs, pursuant to Title

VII, 42 U.S.C. § 2000e et. seq., alleging that during her

employment as a Licensed Practical Nurse with the G.V. "Sonny"
Montgomery Veterans Hospital (VA Hospital) in Jackson,
Mississippi, she was subjected to unlawful employment
discrimination and harassment based on her race (African-
American), sex (female) and religion (Pentecostal).  She contends
this discrimination resulted in a hostile work environment and
accuses defendant of engaging in intentional infliction of
emotional distress.  She further alleges that following her
charges of discrimination, defendant retaliated against her.

During and following her employment, Ellis filed five formal
Equal Employment Opportunity (EEO) complaints with the Department
of Veterans Affairs Office of Resolution Management alleging that
she had been subjected to harassment based on her race, sex and
religion and reprisal based on her EEO activities.  The Department
of Veterans Affairs Office of Employment Discrimination Complaint
Adjudication, in decisions entered July 2001 and May 2003, found
that in all instances, plaintiff had failed to show by a
preponderance of the evidence that she had been discriminated
against.[1]  Ellis subsequently filed two civil actions in this
court alleging discrimination and incorporating the allegations
contained in her prior EEO complaints; these actions were
consolidated into the instant case on September 29, 2004.  An
overview of the facts which gave rise to this action and more

---

[1]  Plaintiff's first three formal complaints were addressed
by the July 2001 decision, and her fourth and fifth complaints
were addressed by the May 2003 decision.

specifically, the allegations contained in her EEO complaints are summarized as follows.

Ellis became employed with the VA Hospital as a nurse in August 1996, and was later transferred to Unit 4C North in April 1999.  According to Ellis, it was here that her problems began. On November 15, 1999, plaintiff filed her first formal EEO complaint, alleging that she had been subjected to harassment based on her race, sex and religion which resulted in a hostile work environment.[2]  Specifically, she claimed that she was assigned more difficult patient care than other employees, including more patient baths; she was required to use leave time upon reporting to work late on one occasion, while a black male employee was not required to use leave time; she overheard various remarks from co-workers and concluded they were talking about her;[3] she suspected unknown persons were tampering with the care of her patients; and she did not receive a performance award. Ellis also complained that her employer had failed to accommodate her desire to have Wednesdays off to attend religious services.

_____

[2]   In each instance, prior to filing a formal EEO complaint, plaintiff contacted an EEO counselor who investigated her claims and attempted to resolve the matter without success.

[3]   This included a reference to "Mother Teresa"; the statement, "You mean to tell me a man died on a tree for something like that."; the remark, "Yea, I can tell you about them church folks, yea!"; and the comment, "She must have been out there to do a rain dance or something."  Notably, these remarks were not specifically directed toward plaintiff or her religious preference; she merely assumed others were talking about her. Moreover, none of these remarks were made by supervisory personnel.

Ellis remained on 4C North until January 19, 2000, when, at her request, she was assigned a "temporary detail," which had the effect of transferring her to the Urgent Care Unit. However, plaintiff claims she continued to experience problems at work despite the transfer. On February 14, 2000, plaintiff filed a second formal complaint, alleging that she had been subjected to harassment in retaliation for filing her first EEO complaint during both her assignment to 4C North and after her transfer to Urgent Care. Specifically, Ellis complained of three confrontations with one male co-worker prior to her transfer. She claimed that on one occasion following an argument he told her she was "full of shit" and acted as if he was going to physically attack her; on another occasion he commented to a co-worker in plaintiff's presence, "I told you I can make'm run! Look at her! Yeah! She scared!"; and on the third occasion, he stared at her and made her feel uncomfortable. In this complaint, Ellis also complained that following her transfer, a worker's compensation claim she had submitted in January 2000 had not been forwarded to the proper department in a timely fashion; that her time and attendance were monitored more closely than her co-workers'; that her W-2 form was not given to her until she requested it; that her pay stubs were also retained until she requested them; and when she had to leave work early due to illness, she was charged emergency leave for the entire shift.

4

On February 24, 2000, Ellis went on leave (sick leave and annual leave) for what she described as a "work-related illness", and at some point in time, presumably when plaintiff had exhausted her available leave, she was placed on Leave Without Pay (LWOP) status.  While on leave, plaintiff filed a third formal complaint on June 10, 2000, in which she claimed that she had again experienced reprisal for her prior EEO complaints, contending that defendant had intentionally delayed the processing of her request for placement in the Leave Share Program and that her request for advanced sick and annual leave had been denied.

The record reflects that while she was still on LWOP, her worker's compensation claim was denied, first on September 29, 2000 and again on June 18, 2001.  Her application for reconsideration of the decision was denied on October 1, 2001, and sometime in December 2001, based on the denial of plaintiff's worker's compensation, defendant concluded that she should be required to return to work and notified her as such.  However, plaintiff did not return to work, but instead sought an extension of her LWOP status, which was denied.

Subsequently, on February 6, 2002 and April 8, 2002, Ellis filed her fourth and fifth formal EEO complaints, asserting that her employer was continuing to harass her in retaliation for filing EEO complaints.  In the February complaint, she claimed that she had received the letter from her employer requesting that she return to duty on December 17, 2001; however, the letter was

dated December 3, 2001 and postmarked December 19, 2001.[4]  She
concluded that the delay amounted to harassment and reprisal.  In
the April complaint, plaintiff contended that her employer's
denial of her January 21, 2002 request to remain on extended LWOP
status constituted harassment.  She claimed that as a result of
this denial, she anticipated she would be placed on Absent Without
Leave (AWOL) status.  Ellis did not return to work at the VA
Hospital, and she ultimately took disability retirement on August
23, 2002.

Defendant has moved to dismiss, or in the alternative, for
summary judgment as to all of plaintiff's claims.  Addressing
first her disparate treatment allegations, defendant argues that
these allegations do not constitute adverse employment actions as
contemplated by Title VII.

To establish a prima facie case of disparate treatment, Ellis
must demonstrate that (1) she is a member of a protected class;
(2) she is qualified for the position; (3) she suffered an adverse
employment action; and (4) others outside the class who were
similarly situated were treated more favorably than she.  Okoye v.
University of Texas Houston Health Science Center, 245 F.3d 507
(5th Cir. 2001).  The Fifth Circuit has

> a strict interpretation of the adverse employment
> element of [plaintiff's] prima facie intentional

---

[4]  Apparently, a second letter, dated January 4, 2002, was
mailed to Ellis informing her that she was to return to work on
January 28, 2002.

discrimination case.  Under Title VII principles, . . . an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action.  <u>Banks v. East Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, 575 (5th Cir. 2003) (quoting <u>Hunt v. Rapides Healthcare Sys., LLC</u>, 277 F.3d 757, 769 (5th Cir. 2001)).  Rather, an adverse employment action consists of "<u>ultimate employment decisions</u> such as hiring, granting leave, discharging, promoting, and compensating." <u>Felton v. Polles</u>, 315 F.3d 470, 486 (5th Cir. 2002).

<u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 282 (5th Cir. 2004). Having reviewed plaintiff's EEO complaints, it appears that only her first complaint contains allegations of disparate treatment, while the remaining complaints detail allegations of reprisal and harassment.

In that first complaint, plaintiff alleged, among other things, that she was assigned more difficult patient care than her co-workers and she did not receive a performance award.  However, in light of this circuit's strict interpretation of the adverse employment action requirement, the court readily concludes that these allegations do not rise to the level of an adverse employment action.  <u>See</u> <u>id</u>.; <u>see also</u> <u>Ackel v. National Communications, Inc.</u>, 339 F.3d 376, 385 (5th Cir. 2003)  As such, plaintiff has failed to establish a prima facie case of discrimination with respect to these allegations, and therefore, summary judgment as to those claims is appropriate.

The same is true for plaintiff's claim that she was required to use fifteen minutes of emergency leave upon reporting late to

work on September 24, 1999, while a black male co-worker was not.
That is, requiring an employee to use fifteen minutes of leave
time to compensate for being late for work clearly does not
qualify as an "adverse employment action."  Cf. Walker v.
Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (employee's claim based
on employer's failure to pay her $2.89 for overtime she failed to
have approved in advance pursuant to employer's policy did not
rise to level of adverse employment action as loss was de
minimis).[5]

Turning to plaintiff's claim of retaliation, to state a claim
of retaliation under Title VII, Ellis must prove that (1) she
engaged in an activity protected by Title VII; (2) she suffered an
adverse employment action; and (3) a causal nexus existed between
the protected activity and the adverse employment action.  Green
v. Administrators of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir.
2002).  If she can establish a prima facie case of discrimination,
defendant may than articulate non-discriminatory reasons for its

---

[5]     The court notes, moreover, that the proof plainly does
not support plaintiff's allegation that similarly situated
employees were treated more favorably than she in this respect.
Plaintiff claims that two male employees consistently arrived late
to work and were not required to use leave time, but offers no
proof that these other employees were similarly situated.  In
addition, plaintiff herself claims that she was actually given
permission by her supervisor to arrive late when necessary to
accommodate plaintiff's children's and her spouse's schedules, and
that accordingly, she was late without consequence "quite a few
times."  Plaintiff stated that she did not believe that anyone
else had been given "permission" to be late.  It seems, then, that
she was treated more favorably than others.

actions, as it has done here, in which event plaintiff must then
prove that (1) the proffered reasons are false and (2) the real
reasons for her employer's actions were discriminatory.  Pegram,
361 F.3d at 282.

In her EEO complaints, Ellis asserted that the following
occurrences constituted reprisal: (1) three confrontations with a
male co-worker;( 2) delay in handling of her worker's compensation
claim; (3) excessive monitoring of her time and attendance; (4)
retention of her W-2 and pay-stubs; (5) charging her with
emergency leave when she left work early due to illness;[6] 6) delay
in processing her request for inclusion in the Leave Share
Program; (7) denial of her request for advanced sick and annual
leave; (8) late mailing of her "return to work" letter in December
2001; and (9) denial of her request to remain on LWOP status.

Again, "[i]n determining whether a defendant's action
constitutes an adverse employment action, 'we are concerned solely
with ultimate employment decisions.'"  Hockman v. Westward
Communications, LLC,  407 F.3d 317, 330 (5th Cir. 2004)(considering
plaintiff's claim of retaliation)(quoting Walker, 214 F.3d at
629)).  Of plaintiff's retaliation allegations, only those
pertaining to the denials of leave might arguably be considered
adverse employment actions.  Id. (stating that "we have found the

---

[6]   Defendant submits that plaintiff was not charged emergency
leave on this occasion, but was granted a "holiday excused
absence," which plaintiff confirms in her response.

denial of paid or unpaid leave to constitute an ultimate
employment decision").  The remaining claims clearly do not
qualify as adverse employment actions.

As for the claims relating to leave, plaintiff contends,
first, that her request for advanced sick and annual leave was
denied in retaliation for her EEO activity.[7]  Assuming that Ellis
could establish a prima facie case of retaliation with respect to
this claim, defendant has presented its legitimate, non-
discriminatory reason for its decision to deny her request for
advanced leave.  In a letter from Linda E. Moore, Chief of Nursing
Service, Department of Veterans Affairs, Moore explains that
requests for advanced sick and annual leave are not guaranteed and
that prior to approval, management must assure that the work of
the VA Hospital can still be carried out without the use of
overtime or additional man-hours.  Moore states that Nursing
Administration was unable to certify that if plaintiff's request
was granted, the work could be performed without the use of
overtime or additional man-hours, and accordingly, her request was
denied.  For her part, plaintiff does not address this claim or
defendant's proffered reason for denying her request in her
response.  Therefore, the court concludes that summary judgment as
to this claim is in order.

---

[7]  The VA Hospital had a procedure by which employees who had
exhausted their available leave could request permission to use
advanced leave.

Plaintiff also complains that her request for an extension of her LWOP status was denied, as a result of which she anticipated being placed on AWOL status.  However, this did not ultimately occur.  According to plaintiff, she was not placed in AWOL status, purportedly because of her pending claim for Federal Disability Retirement, and presumably she remained on LWOP status until she went on disability retirement.  As such, this claim does not constitute an ultimate employment decision.

In addition to her disparate treatment and retaliation allegations, Ellis alleges in this case that defendant failed to accommodate her need for Wednesdays off to attend religious services.[8]  Under Title VII, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship."  Weber v. Roadway Express, Inc., 199 F.3d 270, 273 (5th Cir. 2000).  "'Undue hardship' exists, as a matter of law, when an employer is required to bear more than a de minimis cost."  Id.

According to defendant, in May 1999, Ellis approached her supervisor, Barbara Yeager, requesting Thursdays off to attend church, and again in August 1999, seeking to alter her request to Wednesdays off.  Yeager testified that she told plaintiff she

_____

[8]  For purposes of this motion, it appears that defendant has assumed that plaintiff can establish a prima facie case of religious discrimination, in that its argument focuses on its attempt to accommodate her request for time off to attend religious services.

would accommodate her request to the best of her ability with the staff available. Yeager submits that she gave Ellis every Thursday off between May and August, for a total of eleven Thursdays. Between August and January (when Ellis left her unit), Yeager gave her seventeen Wednesdays off. Yeager explained that Ellis did work a total of seven Wednesdays between August and January, but three of the seven were the result of plaintiff's request to have a different day off during that work week. Thus, only as to four remaining Wednesdays was Yeager, due to staffing issues, unable to accommodate plaintiff's request to be off. In sum, then, it appears that on thirty-one of the thirty-five Wednesdays/Thursdays between May 1999 and January 2000, plaintiff's request for time off was accommodated by her employer. Plaintiff has offered no proof to the contrary. The only reasonable conclusion to be drawn from these facts is that the employer met its duty under the law to provide a reasonable accommodation to plaintiff. This claim will be dismissed.

Defendant seeks summary judgment as to plaintiff's discriminatory harassment claim, arguing that she cannot prove the required elements of a hostile work environment claim, and in particular, that she cannot possibly show that she suffered severe or pervasive harassment.

To establish a prima facie case of harassment alleging hostile work environment, Ellis must prove that: (1) she belongs to a protected group;(2) she was subjected to unwelcome

12

harassment; (3) the harassment complained of was based on her race, sex and/or religion; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) defendant knew or should have known of the harassment in question and failed to take prompt remedial action. See Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 353 (5th Cir. 2001). "For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Id. (citation omitted). To determine whether a work environment is "hostile" or "abusive," the court must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993).

Here, having thoroughly reviewed plaintiff's EEO complaints detailing her allegations and considering the totality of those allegations, the court concludes that the incidents described by plaintiff cannot reasonably be found to be sufficiently severe or pervasive so as to have altered the conditions of her employment or to have created an abusive working environment. As such, summary judgment as to plaintiff's hostile work environment claims will be granted.

Finally, defendant also argues summary judgment is warranted as to plaintiff's intentional infliction of emotional distress claim, on the basis that the facts do not support a finding that she was subjected to extreme and outrageous conduct.  As explained by the Mississippi Court of Appeals,

> In order for [a plaintiff] to prevail on a claim of intentional infliction of emotional distress, he must prove [defendant's] conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Brown v. Inter-City Fed. Bank, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Under our law, liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.  Id.  Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes.  Id.  "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress."  Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 654 (5th Cir. 1994).

Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004).  Defendant maintains that the conduct of which plaintiff complains does not rise to the level of extreme and outrageous.  See Speed v. Scott, 787 So. 2d 626 (Miss. 2001) (holding that employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for intentional infliction of emotional distress); Raiola, 872 So. 2d 79 (finding that plaintiff's claims that employer called him a thief and made remarks about his Italian heritage were not so extreme and outrageous as to justify redress).

Even viewing the evidence in the light most favorable to plaintiff, considering Mississippi law on the subject, and the high standard set by the Mississippi Supreme Court,[9] this court is unable to conclude that one could reasonably interpret the incidents plaintiff describes as rising to the level of "extreme and outrageous." Accordingly, the court concludes that defendant's motion for summary judgment should be granted.

Based on the foregoing, it is ordered that defendant's motion for summary judgment as to all claims asserted by plaintiff Pamela Ellis is granted.[10]

_____

[9]   See Jenkins v. City of Grenada, Miss., 813 F. Supp. 443, 446 (N.D. Miss. 1993)("Meeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi.").

[10]   Defendant has also filed a motion to strike the portion of plaintiff's response which raises a new claim of post-termination retaliation. Specifically, plaintiff takes issue with a letter postmarked October 4, 2005 from the VA Hospital advising her that Veterans Health Administration "regulations require a comprehensive review of all disability retirements of professional personnel . . . to determine whether or not, based on an individual's justification for disability, he/she may have so significantly failed to meet generally accepted standards of clinical practice as to raise reasonable concern for the safety of patients." According to defendant, the results of this review will determine whether the VA Hospital is required to initiate a report to the State Licensing Board. Defendant contends, and the court agrees, that this claim should be stricken on grounds that it has not been through the administrative process and it is not properly a part of this case. As such, defendant's motion to strike is granted.

A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 20th day of January, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE